UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA C. BURNS,

    Plaintiff,                                                                 Civil Action No. 10-CV-11326

vs.                                                                                          HON. BERNARD A. FRIEDMAN

THYSSENKRUPP MATERIALS N.A., INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I, II AND III AND DISMISSING COUNTS IV AND V FOR LACK OF SUBJECT MATTER JURISDICTION**

This matter is presently before the court on defendant's motion for summary judgment [docket entry 49]. Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the court shall decide this motion on the briefs.

This is an employment discrimination case in which plaintiff alleges that she was discharged in November 2008 by defendant ThyssenKrupp Materials ("Thyssen" or "TKMNA") because of her gender, her age (54), and because she complained to her supervisors that she was paid less than the men in the office for substantially similar work. The complaint has five counts: gender discrimination under Title VII (Count I); violation of the Equal Pay Act (Count II); age discrimination under the ADEA (Count III); age and gender discrimination under Elliott-Larsen (Count IV); and retaliation under Elliott-Larsen for complaining about pay discrepancies (Count V). For relief she seeks damages, costs, interest and attorney fees. Defendant acknowledges that plaintiff worked for defendant for over 25 years, mainly as an office manager, but denies that she was paid less than its male employees who performed similar work. Defendant indicates that the

men to whom plaintiff compares herself (branch managers and plant managers) were paid more because they had better qualifications and greater responsibilities. Defendant also indicates that it discharged plaintiff as part of a reduction-in-force ("RIF"), and not because of plaintiff's age, gender, or complaints regarding unequal pay.

Plaintiff's resume is attached to her response as Ex. 13. She has two bachelor's degrees from the University of Michigan, one in elementary education and social science and the other in graphic design and fine art. She began working for Thyssen in October 1983 in the shipping and receiving department. She later worked for Thyssen as an administrative assistant, a "manager of contract administration," and as a benefits administrator. From 1998 until her termination in 2008 plaintiff worked as an office manager at Thyssen's corporate headquarters. The headquarters were located in the Renaissance Center in Detroit, Michigan, until 2004, at which time they were moved to a building in Southfield, Michigan. The new building housed the corporate headquarters plus the company's information technology, sales and accounting divisions.

Plaintiff's job as office manager had many facets. She supervised three mail room clerks and the receptionist, dealt with any complaints from the 250 employees in the building regarding heating and cooling problems, dealt with building security issues, arranged for landscaping around the building, stored documents, and did whatever else was needed to keep the office running. *See* Pl.'s Ex. 13 and 14.

Plaintiff was discharged on November 20, 2008. At the time of her discharge, plaintiff had worked for Thyssen full time for 25 years and two months. She was 54 years and three months old – nine months short of being eligible for a full pension.

*Defendant's Motion for Summary Judgment*

Defendant seeks summary judgment on all five of plaintiff's counts. For the following reasons, the court shall grant defendants' motion as to the federal claims (Counts I, II and III) and dismiss the state claims (Counts IV and V) for lack of subject matter jurisdiction.

### *Count I: Sex Discrimination (Title VII)*

In her complaint plaintiff alleges that defendant treated her differently because of her sex. *See* Compl. ¶ 34. In her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), plaintiff alleged:

> . . . I have not been paid equally as other males in the same or similar positions of management. This will affect my benefits that are due to me at the time of retirement. . . . I am aware of a male employee who was laid-off but months were added to his service time so that he would receive full early retirement benefits.
>
> I . . . have been discriminated against by being laid [off] and denied benefits due to my sex . . . .

Plaintiff did not allege "retaliation" in her EEOC charge.

In her response brief, plaintiff indicates that the sole basis for her Title VII claim is that "she was subjected to an adverse employment action of receiving lower pay than Defendant's Branch Managers." Pl.'s Resp. at 19.[1] As noted above, plaintiff argues she should have been paid

---

[1] Plaintiff also states that "[a]s Plaintiff continued to complain of gender based discrimination as late as September 2008, she was the first person to be terminated by Defendant in November 2008, despite her pleas that she, after 25 years of loyal service, be allowed to work the additional full months [sic] to obtain a full pension." Pl.'s Resp. at 20. This, however, relates to her claim of retaliation, which is the subject of her Elliott-Larsen claim in Count V. Since plaintiff did not allege retaliation in her EEOC complaint, this cannot be raised now as part of her Title VII claim. "[F]ederal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be

3

as much as Thyssen's branch and plant managers. Defendant counters by arguing that plaintiff is comparing "apples and oranges" because her job, which plaintiff agrees was "unique" (Pl.'s Dep. Vol. II at 95), was completely different from, and did not involve as much responsibility as, that of branch or plant managers.

Plaintiff acknowledges that she has no "direct evidence" of defendant's discriminatory intent. Instead, she relies on circumstantial evidence. The parties agree on the legal standards governing this claim. As recently stated by the Sixth Circuit, under Title VII

> [o]ur analysis is governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under that analysis, a plaintiff must first establish a prima facie case of unlawful discrimination, which requires [plaintiff] to show that: (1) she was a member of a protected class; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) a similarly situated non-protected employee was treated more favorably or she was replaced by someone outside the protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir.2006).
>
> Once the plaintiff has made her prima facie showing, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory basis for the adverse employment action. *Id.* at 706. This explanation "'must be legally sufficient to justify a judgment for the defendant.'" *Id.* (*quoting Burdine*, 450 U.S. at 255, 101 S.Ct. 1089). If the defendant meets its burden, the plaintiff must show that the proffered reason was actually a pretext for unlawful discrimination. *Id.* at 706-07. "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Id*. at 707 (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

*Neview v. D.O.C. Optics Corp.*, 382 F.App'x 451, 457 (6th Cir. 2010). Plaintiff "can demonstrate

---

reasonably expected to grow out of the EEOC charge." *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).

pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

Defendant argues that plaintiff has not stated a prima facie case of sex discrimination under Title VII because she has not met the second and fourth prongs – that is, she has not shown that she was subjected to an adverse employment action (paid less) or that she and the branch managers, all of whom were male, were similarly situated. Defendant acknowledges that its branch managers (with one exception) were paid more than was plaintiff, but argues that the pay differential was justified because the branch managers had greater responsibilities than plaintiff.

> This Court . . . explained, in *Ercegovich v. Goodyear Tire & Rubber Co.*, that the plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated;'" rather, the plaintiff and the employee with whom the plaintiff seeks to compare herself "must be similar in 'all of the relevant aspects.'" 154 F.3d 344, 352 (6th Cir.1998) (*quoting Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)). This means the plaintiff must "prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of [the non-minority] employees who he alleges were treated more favorably." *Pierce*, 40 F.3d at 802. Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated. *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir.2004) (*citing Pierce*, 40 F.3d at 802).
>
> \* \* \*
>
> . . . *See, e.g., Hill v. Forum Health*, 167 Fed.Appx. 448, 456, 2006 WL 162967, at \*7 (6th Cir. 2006) (comparing plaintiff's duties with the duties included in the non-protected employee's responsibilities and concluding that the two employees were not similarly situated); *Leadbetter*, 385 F.3d at 691-92 (finding that plaintiff was not similarly situated to non-protected employee with "superior experience"); *Campbell v. Hamilton County*, 23 Fed. Appx. 318, 326 (6th Cir. 2001) (concluding that differences in levels of experience

5

>established that two employees were not similarly situated); *Pierce*, 40 F.3d at 802 (considering distinctions in employment status and job responsibilities in determining whether two employees were similarly situated).

*Hatchett v. Health Care and Retirement Corp. of Am.*, 186 F.App'x 543, 548-49 (6th Cir. 2006).

In the present case, plaintiff is comparing herself to the nine Thyssen's branch managers in Michigan, Indiana and Illinois. They and their salaries on plaintiff's Ex. 17. In 2008, the year plaintiff was terminated, the five branch managers who were employed that year had salaries ranging from $78,641 to $419,628. Two managers who started in 2009 had salaries of $80,510 and $127,748. Two other managers who started in 2010 had salaries of $87,546 and $224,144. In 2008, plaintiff's base salary was $64,000; she was also paid a bonus of $4,710. *See* Def.'s Ex. 11 and 14. Therefore, plaintiff correctly notes that in 2008 all of the branch managers were paid more than she was. In fact, the lowest-paid branch manager (Charles Randall, $78,641) was paid approximately $10,000 more than plaintiff.[2]

The critical issue is, has plaintiff shown that she and the branch managers were "similarly situated." The short answer is "no" because there is no similarity between plaintiff's job as office manager and the branch manager jobs. At her deposition, plaintiff acknowledged at one point that "I was a unique position. You could never compare me to anyone else for salary comparison." Pl.'s Dep. Vol. II at 95. Nonetheless, plaintiff contends that her job was as important

---

[2] In 2007, Randall was paid $63,407 and plaintiff was paid $68,999. *See* Pl.'s Exhibits 15 and 17. This is the only instance of a branch manager being paid less than plaintiff. Defendant has identified two plant managers, Jamie Sparks and Michael Baker, who were paid less than plaintiff in 2006 and 2007. *See* Def.'s Exhibit 2 (Evert Declaration) ¶ 33.

as that of the branch managers and that she should have been paid at least as much as they were.[3]

For present purposes, the court accepts plaintiff's description of her job as set forth in her Exhibits 13 and 14. Plaintiff appears to accept defendant's description of the branch manager position, as set forth in the branch manager Job Profile, which is her Exhibit 16.[4] The "summary of position" alone, contained in this Job Profile suffices to show how different this job is from plaintiff's job as office manager:

> Summary of Position:
> Direct, lead and supervise the sales and operational efforts and functions of employees within the branch or division towards the accomplishment of profit goals. Create a safe and comfortable working environment that will promote customer service and motivate employees to surpass customer expectations. Devise a system of continual improvement that will encompass or include every function of the company.

This Profile goes on to list several "Key Accountabilities" for branch managers, including: "Create a profitable environment to improve cycle time for metal users in the respective region"; "Maintain an acceptable and profitable turnover of inventory such to help our customers meet or exceed their customer's demands"; "Create an environment to encourage/demand customers for payment of

---

[3] In 2006 plaintiff complained to her supervisor, Michael Button, that she thought her salary was too low. In his written response (Def.'s Ex. 9) Button noted that plaintiff's total compensation (salary plus bonus) in 2006 was $67,500. He used "Salary Wizard" at monster.com to determine that office managers in the Southfield area were paid between $52,000 and $75,000, with the median being $61,000. Button also noted that because plaintiff supervised only four people, her salary should be toward the bottom of this range. He concluded that her total 2006 compensation of $67,500 was reasonable. Plaintiff was paid $68,999 in 2007 and $64,361 in 2008. *See* Pl.'s Ex. 15.

[4] This Job Profile indicates it was revised on 4-25-11, and plaintiff notes that this was after she filed suit. However, plaintiff does not point to anything in the Job Profile that is inaccurate or in any way different from the branch manager job in 2008. Therefore, the fact that the Job Profile's "revised" date post-dates commencement of the instant lawsuit is irrelevant.

product and services within 30 days"; and "Investigate and analyze all products and processes to determine if more profitable results are available." The main theme is that branch managers are responsible for overseeing their branch/division, selling their products and maximizing profits for the company.

The specific jobs of the nine branch managers are summarized in an affidavit from defendant's human resources director, Dana Evert. *See* Def.'s Exhibit 2. This is worth quoting at length because it clearly shows that plaintiff and the branch managers did completely different things. Evert avers:

> 30. TKMNA has branch managers who oversee operations at one or more facilities and their duties and responsibilities include (1) sales, production, processing, and logistics, (2) managing the steel, metals or plastics inventory to be processed and sold to customers, (3) the hiring, firing, discipline, and training of sales, operations, and administrative employees, and (4) overall profit and loss accountability. Ultimately, they manage the shipping and receiving of products with a variety of customers and suppliers that are sold and inventoried, customer relationships, and have responsibility for ISO and quality programs and supervise the operational efforts of salaried and hourly employees toward achieving a profit.

Evert then goes through each of the nine branch managers with whom plaintiff is comparing herself. Evert avers that each of these branch managers has the general responsibilities just outlined and, in addition, the following specific responsibilities:

> 31. . . .
> (1) **Charles Randall** works for TK Aerospace in Indianapolis, Indiana. His duties include supervising plant and warehouse supervisors, project managers, quality supervisor, and the hourly production workforce. He oversees the production, processing, sales and distribution of metal and steel products to customers and potential customers, including Boeing.
> (2) **Roy Casali** was a branch manager for AIN Plastics in Bensenville, Illinois and had responsibility for supervising the sales and hourly production workforce at that facility which is involved in

fabricating plastics products to customers' specifications. . . .

(3) **Todd Ziedonis** replaced Roy Casali as branch manager for AIN Plastics . . . and performed the same responsibilities.

(4) **Jeffrey Garden** is the branch manager for AIN Plastics in Madison Heights, Michigan. His job duties [are essentially the same as those] at Bensenville, Illinois.

(5) **Ronald Buzinski** is the branch manager for Copper and Brass Sales in Chicago, Illinois. His job duties include supervising the sales and production workforce at that location and has responsibility for hiring, firing, evaluating and disciplining them. The production workforce warehouses and processes non-ferrous and other metal products operating equipment and machinery like saws and slitters . . . to customers' specifications. Buzinski oversees that entire process. In addition, his compensation was partially the result of the fact that the Company purchased his business from him in 2006.

(6) **Robert Wolcott** works for Ken Mac in Richburg, South Carolina. Ken Mac is one of the largest aluminum distributors in North America . . . . His job duties include supervising three regional territory managers, a business development manager, and an inside sales manager, who supervises the sales force.

(7) **Charles Bechman** is general manager of ThyssenKrupp Steel Services Trading in Southfield, Michigan, and has responsibilities for outside sales to [a] variety of manufacturers and suppliers. . . .

(8) **Armando Figueroa** works for ThyssenKrupp Steel Distribution in Detroit, Michigan, which is a supplier of sheet-carbon rolled steel products sold to such customers as Chrysler and Navistar. His job duties include supervising the sales managers, a chief financial officer, the laboratory services manager, purchasing and a human resources generalist. In addition, he supervises a plant manager, who supervises the production workforce that includes material handlers, general warehouse employees, inspectors, machine operators, helpers, and maintenance employees, all of whom are involved in the processing and distribution of the steel product which must meet customers' specifications. The hourly workforce is represented by a labor union and Figueroa's duties include negotiating the labor agreement with that union.

(9) **Vincent Kania** works for Ken Mac in Detroit, Michigan. His duties include supervising eight regional territory managers, one inside sales manager, one quality supervisor, one sales product manager, one office manager, and the plant manager . . . .

Plaintiff and the branch managers are not similarly situated. As noted above, the test

is whether plaintiff and her comparitors are "similarly situated in all relevant respects." To be similarly situated, the jobs being compared must be "nearly identical." *Pierce*, 40 F.3d at 802. Courts look to differences in job title, responsibilities, experience, and work record to determine if employment situations are comparable. Plaintiff's job was to keep the day-to-day operations of the corporate headquarters running smoothly. The branch managers were responsible for manufacturing and selling the company's products. Plaintiff actually supervised just four employees, whereas the branch managers supervised everyone within their branch. One of the branch managers, as part of his job, negotiated labor contracts. These are entirely different jobs.

In her response brief, plaintiff first appears to compare herself to all branch managers, but she then indicates she "specifically identifies Branch Managers Kim Sosa and Tony Bachuwa as Branch Managers she state she is equal to in function. (See Exhibit 2, Dep. Patricia Burns, pp. 38-93)." Pl.'s Resp. at 21. The referenced 55 pages of the second volume of plaintiff's deposition transcript do not include any mention of Sosa or Bachuwa. In the first volume of plaintiff's deposition (Pl.'s Ex. 1) "Ken Sousa" is mentioned at pp. 94-95 and "Tony Bachuwa" is mentioned at pp. 102 and 112. Plaintiff testified that these two were plant managers, not branch managers, and she did not specifically compare her job to theirs. Plaintiff did contend that her job was similar to those of all plant managers, as well as branch managers, although she conceded that her job had nothing to do with production or sales or negotiating contracts.

Plaintiff has not made out a prima facie case of sex discrimination under Title VII. The fourth element of a prima facie case is that similarly situated men received favorable treatment (in this case, higher salaries). Since plaintiff and the branch managers – and plant managers – are not similarly situated, and these are plaintiff's only comparitors, she has failed to state a prima facie

10

case of sex discrimination under Title VII. Defendant is therefore entitled to summary judgment on Count I.

### *Count II: Equal Pay Act*

Based on the same facts, plaintiff also asserts a claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1). This statute

> prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. . . . In order to establish a prima facie case of wage discrimination under the EPA, plaintiffs must show that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (*quoting* 29 U.S.C. § 206(d)(1)). Jobs need not be identical in order to be considered "equal work" under the EPA. *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265, & n. 10 (3d Cir.), *cert. denied*, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). Whether a job is substantially equal for purposes of the EPA is determined on a case-by-case basis and "resolved by an overall comparison of the work, not its individual segments." *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981) (orderlies and nurses aides perform substantially equal work).
> "Unlike the showing required under Title VII's disparate treatment theory, proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act." *Peters v. City of Shreveport*, 818 F.2d 1148, 1153 (5th Cir.), *cert. denied*, 485 U.S. 930, 108 S.Ct. 1101, 99 L.Ed.2d 264 (1988), *abrogated on other grounds, Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Once the plaintiff establishes a prima facie case, the defendant must 'prove' that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir.1998) (*citing Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. 2223). Because these are affirmative defenses, the defendant bears the burden of proof. *See*

> *Corning Glass Works*, 417 U.S. at 197, 94 S.Ct. 2223; *see also EEOC v. Romeo Cmty. Schs.*, 976 F.2d 985, 988 (6th Cir.1992). The burden shifting under the EPA differs from the Title VII framework, in which a "defendant need only assert a legitimate, non-discriminatory reason for the different treatment afforded the plaintiff as compared to her similarly situated male co-workers," *Buntin*, 134 F.3d at 799 n. 6, at which point the burden shifts back to the plaintiff to show pretext. Under the EPA, however, the plaintiff "never bears the burden of persuasion regarding the affirmative defenses." *Id.* at 800 n. 7.

*Beck-Wilson v. Principi*, 441 F.3d 353, 359-60 (6th Cir. 2006).

This claim fails for the same reason that the Title VII claim fails. To state a prima facie case under the Equal Pay Act, plaintiff must show that she and the higher-paid men (in this case, the branch managers) were doing "equal work on jobs [requiring] equal skill, effort, and responsibility, and which [were] performed under similar working conditions." *Corning Glass Works*, 417 U.S. at 195. The jobs being compared do not have to be identical, but they do have to be "substantially equal" based on an "overall comparison of the work." *Odomes*, 653 F.2d at 250.

As noted above, plaintiff and the branch managers did not do "substantially equal" work. Plaintiff kept the headquarters running smoothly while the branch managers produced and sold the company's products. Since plaintiff has failed to compare herself to men who were doing substantially equal work, she has failed to make out a prima facie case under the Equal Pay Act. The court shall therefore grant summary judgment for defendant on Count II.

### *Count III: Age Discrimination under the Age Discrimination in Employment Act*

In this count plaintiff alleges that defendant discriminated against her based on her age by (1) denying her "equal opportunity for advancement and pay compared to younger male employees," (2) discharging her, and (3) failing to transfer her to another job or rehire her. Compl.

¶ 47.  Defendant argues that it discharged plaintiff because it eliminated her position as part of a reduction in force and that her age had nothing to do with this decision.  Defendant also denies that it discriminated against plaintiff in terms of pay, advancement opportunities or in not transferring her.

The burdens of proof in ADEA actions in a reduction-in-force ("RIF") setting have been articulated as follows:

> The ADEA prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1).  An ADEA plaintiff must prove by a preponderance of the evidence, either direct or circumstantial, that age was the but-for cause of the challenged employer decision. *Gross v. FBL Fin. Services, Inc.*, ––– U.S. –––, 129 S.Ct. 2343, 2351 n. 4, 174 L.Ed.2d 119 (2009). . . .
>
> In analyzing circumstantial evidence in ADEA cases, this circuit applies the *McDonnell Douglas* framework.[5] *Geiger*, 579 F.3d at 622. A plaintiff sets forth a prima facie case of age discrimination through circumstantial evidence by establishing: 1) that he was a member of a protected class; 2) that he suffered an adverse employment action; 3) that he was qualified for the position held; and 4) that he was replaced by someone outside of the protected class, *id.* at 622, or that he was treated differently than similarly situated employees outside the protected class, *see Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir.2008). If a plaintiff is terminated as part of a work force reduction, "this court

---

[5] In the present case, the *McDonnell-Douglas* framework applies because plaintiff has no direct evidence of age discrimination.  "Direct evidence of discrimination is that evidence which, if believed, *requires the conclusion* that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (emphasis added).  "For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). In her response brief, plaintiff concedes that her "evidence is entirely circumstantial."  Pl.'s Resp. at 23.

> has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger*, 579 F.3d at 623 (*citing Barnes v. GenCorp.,* 896 F.2d 1457, 1465 (6th Cir.1990)).
>
> \* \* \*
>
> . . . "Where . . . there is a reduction in force, a plaintiff must either show that age was a factor in eliminating his position, or, where some employees are shifted to other positions, that he was qualified for another position, he was not given a new position, and that the decision not to place him in a new position was motivated by plaintiff's age." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir.1998) (*quoting Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir.1992)). "The purpose of the additional evidence requirement is to ensure, in reduction of force cases, that the plaintiff has presented evidence to show that there is a chance the reduction in force is not the reason for the termination." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir.2006).

*Johnson v. Franklin Farmers Co-op.*, 378 F.App'x 505, 507-10 (6th Cir. 2010) (footnotes omitted).

> Once a plaintiff satisfies her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir.2008). If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination. *Id.* The burden of persuasion, however, remains on the ADEA plaintiff at all times to demonstrate "'that age was the "but-for" cause of their employer's adverse action.'" *Geiger*, 579 F.3d at 620 (*quoting Gross*, 129 S.Ct. at 2351 n. 4).

*Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010). Pretext can be shown "by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-806 (6th Cir. 1998).

Plaintiff concedes that her job was eliminated as part of a reduction in force. At one

point in her response brief, plaintiff seems to suggest that the RIF did not really take place until early 2009, but at page 24 of her brief plaintiff abandons this argument, as she discusses RIF cases which require her to show she was "singled out for discharge based on impermissible reasons." The undisputed testimony from Thyssen's CFO, Norbert Goertz, is that Thyssen began experiencing a financial crisis in approximately October 2008. Beginning in November 2008, the month plaintiff was discharged, and continuing until approximately mid-2009, Thyssen cut 700 jobs (300 in 2008 and another 400 in 2009), about one-fourth of its work-force. During this time, Thyssen lost $90 million. All of the company's divisions were directed to "reduce head count" by a certain number. The group to which plaintiff belonged was told to eliminate two positions. The V-P in charge of that group, Michael Halsband, asked the manager below him (plaintiff's immediate supervisor), Michael Button, to make a recommendation. Button recommended plaintiff and Kelly Eberhardt, a 70-year old woman who worked in the mail room for termination. Button testified that he selected plaintiff for elimination because "it would have the least interruption on the viability of the business going forward." Button Dep. at 68. He selected Eberhardt because she "had the smallest amount of the responsibility for the mail room and the data entry" and her work "could very easily be picked up by" the remaining mail room workers. *Id.* Neither plaintiff nor Eberhardt were replaced. Their responsibilities were divided up among other employees.

In plaintiff's response brief, it is apparent that plaintiff's age discrimination claim consists entirely of the allegation that defendant transferred two younger workers whose jobs were eliminated to other jobs within the company, whereas plaintiff was not transferred. Plaintiff points to Kendra Palmer (age 34) and Maureen Napa Tonova (age 43). Plaintiff indicates that Palmer was reassigned to a position in the benefits department within human resources, and that Napa was

15

moved to a position as administrative assistant in the risk management department. Pl.'s Resp. at 3, 24-25. Plaintiff says she was qualified for both jobs.

> Defendant's human resources director, Dana Evert, avers that
>
> 23. Kinda Palmer was an administrative assistant performing clerical functions in the Human Resources Department at the time of plaintiff's termination. In January, 2009, Palmer became a benefits administrator performing primarily clerical duties. In that position, Palmer was paid a salary of $32,000. Her HR administrative assistant position was not filled.
>
> \* \* \*
>
> 25. Cindy Harris was an administrative assistant in the Company's risk management group. Her job duties primarily were processing the Company's worker's compensation claims and she was supervised by the Company's risk manager, James Van Valkenberg. Plaintiff never performed those responsibilities. On November 19, 2008, Harris was terminated for performance reasons. Van Valkenberg performed her responsibilities until fall, 2009, when Maureen Nepa n/k/a Tonova . . . began performing Harris's job on a part-time basis. . . . On June 1, 2010, Tonova assumed those responsibilities on a full-time basis.

Def.'s Ex. 2. At her deposition, Evert testified that when Palmer's HR administrative support job was eliminated she moved into the "benefits administrator" job in January 2009. When Harris was fired in November 2008 (the month plaintiff's job was eliminated) her workers comp job went unfilled for approximately one year. In the fall of 2009, Maureen Tonova was put into this job on a part-time basis when her job as an administrative support person was eliminated. Evert Dep. at 73-75. Evert conceded that in both Palmer's and Tonova's cases, their jobs were eliminated but they were transferred to other jobs. *Id.* at 76.

These two transfers do not suffice to make out a prima facie case of age discrimination under a "failure to transfer" theory. Plaintiff must show that she was qualified for these positions and that "a similarly-situated employee who is not a member of the protected class

16

was offered the opportunity to transfer." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998). Defendant argues plaintiff was not qualified for the job Nepa/Tonova was allowed to fill because plaintiff had no experience dealing with workers comp claims. Even assuming plaintiff was qualified for both jobs, her burden is to compare herself with younger employees who are "similarly situated in all relevant respects." Kinda Palmer was not similarly situated because she was already in the HR department and simply switched from one clerical position to another within that department. Nepa/Tonova is a closer case, as she was permitted to transfer to the risk management (workers comp) job when her job as an administrative support person for an executive was eliminated. However, the year-long time difference between plaintiff's termination (November 2008) and Nepa/Tonova's transfer (sometime in the fall of 2009) makes the two cases inappropriate for comparison. Plaintiff must produce evidence which gives rise to an inference that plaintiff was treated less favorably because of her age. No such inference can be made by pointing to a younger employee was transferred a year after plaintiff was terminated.

*Conclusion*

For the reasons stated above, the court shall grant summary judgment for defendant on Counts I, II and III. The two remaining claims, Counts IV and V, are brought under the Michigan Elliott-Larsen Civil Rights Act. In accordance with *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), the court shall dismiss these claims without prejudice. *See also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("a federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff"s federal claims"); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (a federal court that

has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims. . . . Residual jurisdiction should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state law issues'").

Accordingly,

      IT IS ORDERED that defendant's motion for summary judgment is granted as to Counts I, II and III.

      IT IS FURTHER ORDERED that Counts IV and V are dismissed without prejudice for lack of subject matter jurisdiction.

      S/Bernard A. Friedman
      BERNARD A. FRIEDMAN
      SENIOR UNITED STATES DISTRICT JUDGE

Dated: February 16, 2012
      Detroit, Michigan